IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | |
| ) | 1:09cr414 (JCC) |
| Marvin Wayne Williams, Jr., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motions for a Judgment of Acquittal. [Dkts. 136, 137.] Defendant Anderson's Motion [Dkt. 137] is filed on behalf of all three defendants in this case, and Defendant Wiggenton also filed his own motion [Dkt. 136]. The motions are largely duplicative, however, and will be addressed together here.

**I. Background**

Defendants in this case were alleged to be drug dealers who shot Kyle Turner on the belief that Turner stole money and narcotics from their stash-house on December 9, 2009. On December 10, 2010, after five days of trial and three days of deliberations, a jury convicted Marvin Wayne Williams, Jr. (a/k/a "Lil' Wayne"), Freddie Wigenton (a/k/k "Lil' D"), and Deshawn Anderson (a/k/a "Buddha") (collectively, "Defendants") of conspiracy to distribute more than 500 grams of cocaine, in

1

violation of 21 U.S.C. §§ 841(a)(1) and 846 ("Count 1"), and use of a firearm during a drug trafficking offense resulting in the death of Kyle Turner, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j) ("Count 3").  The jury acquitted Defendants of an intentional killing while engaged in drug trafficking under 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.  [*Id.*]

## II.  Standard of Review

Federal Rule of Criminal Procedure 29(c) provides, in relevant part, "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."  Where such a motion is based on "insufficiency of the evidence, the conviction must be sustained if the evidence, when viewed in the light most favorable to the Government, is sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *United States v. Romer,* 148 F.3d 359, 364 (4th Cir. 1998).

When ruling on a Rule 29(c) Motion "the trial court should only consider the sufficiency of the evidence presented in that trial, not what evidence is likely to be admitted or excluded in a future trial."  *United States v. Mackins,* 32 F.3d 134, 138-39 (4th Cir. 1994).  The Government must be allowed "the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted).

2

"Furthermore, neither the district court nor the appellate court should consider a witnesses' credibility, but must assume that the jury resolved all contradictions in favor of the Government." *Romer,* 148 F.3d at 364.

**II. Analysis**

    A.   <u>Count 1</u>

Defendants raise a series of arguments that insufficient evidence was presented for the offense of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

First, Anderson argues that there is no evidence in the record that Annette Sprow identified him in Court. But from a review of the transcript, it appears that Ms. Sprow did identify Anderson and that this Court simply failed to admit her identification into the record:

> Q. Do you see Buddha in Court today?
> A. Yes.
> Q. Can you describe what he's wearing.
> A. Tan shirt.
> Mr. Mellin: I'd ask that the record reflect identification of Defendant Anderson.

(Sprow Tr. at 124:16-21.) To the extent the Court neglected to respond to the Government's request, the Court now takes notice that Defendant Anderson indeed wore a tan shirt on that day of trial and that Sprow correctly identified him.

3

Second, Anderson argues that the only evidence supporting his participation in the drug conspiracy is Sprow's testimony, which is insufficient to support Count 1. The relevant testimony is as follows:

> Q. Let me ask you about Buddha or Defendant Anderson. What would he sell?
> A. Crack.
> Q. Who was he getting the crack from?
> A. Me.

(Sprow Tr. at 125:17-21.) Anderson argues that the absence of additional evidence corroborating this testimony, as well as Reginald Waters's testimony that Anderson "just didn't sell drugs" means that no rational juror could have found it sufficient basis for a conviction. The Court disagrees; Anderson is calling for a credibility judgment that was properly for the jury to make, not the Court. *See United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983). Anderson further argues that the inference from Sprow's testimony that Anderson actually sold cocaine is inadmissible hearsay. The Court fails to see how this is hearsay; it goes to what Anderson *did*, not what he *said* (not to mention Federal Rule of Evidence 801(d)(2)(E)'s co-conspirator statement exception).

Third, Anderson argues that the government failed to adduce evidence as to the quantity of drugs he sold. As this Court explained in its jury instructions, a defendant is accountable for the quantity of cocaine that he personally

distributed, aided and abetted others to distribute, or could reasonably foresee that others would distribute during and in furtherance of the conspiracy. *United States v. Hickman*, 626 F.3d 756, 771 (4th Cir. 2010). Here, Sprow testified that she was in a conspiracy that included Anderson (Sprow Tr. at 124:6-7), and that she sold over 1,000 grams of cocaine from 2005 to 2007 in the course of this conspiracy (Sprow Tr. at 116:18-20; 120:23-121:3). She further testified that Anderson would personally buy an eight-ball of crack from her to sell about once a week during the conspiracy. (Sprow Tr. at 125:22-25.) This together was sufficient evidence that Anderson could reasonably foresee that he and his co-conspirators would sell 500 grams or more of cocaine between 2005 and 2007.

As for Wiggenton, he argues that the only testimony linking him to the conspiracy was Sprow's testimony, and that Sprow admitted to lying regarding other matters, thus undermining her credibility. Again, the jury was well aware of Sprow's past false statements, and it is not the Court's place to second-guess what impact Sprow's history should have had upon the jury's reasoning. As noted above, "neither the district court nor the appellate court should consider a witness's credibility, but must assume that the jury resolved all contradictions in favor of the Government." *Romer,* 148 F.3d at 364.

Thus, the Court will deny Defendants' motion with respect to Count 1.

B. Count 3

Defendant Anderson argues that, because the Jury returned a verdict of not guilty for Count 2, and because Count 2 "is a necessary predicate to a conviction under the § 924(j) element of Count 3," a guilty verdict should not have been possible for Count 3. As Defendant Wiggenton recognizes, however, a "jury's inconsistent verdict of not guilty on Count 2 and guilty on Count 3 is not a matter for judicial review." [Dkt. 136 at 3 (citing *United States v. Powell*, 469 U.S. 57, 67 (1984)).] So long as the jury was presented sufficient evidence to convict the Defendants of all the elements of Count 3, its failure to convict of a predicate offense is of no effect. *United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997).

As this Court explained to the jury, it was required to find the following to convict Defendants of Count 3.

> One: that Defendants "committed the crime of using a firearm in connection with the conspiracy to distribute crack cocaine resulting in death as identified in Counts One, Two, and Three";
>
> Two: that Defendants acted knowingly; and
>
> Three: that "Defendants' use or carrying of that firearm was during and in relation to counts one, two, and three of the superseding indictment."

(Dec. 7, 2010 Trial Tr. at 24:9-23.) Here, the evidence was sufficient for the jury to find all three elements, despite any inconsistencies in its verdict.

Annette Sprow testified that she purchased a .45 caliber handgun for Defendant Williams. (Sprow Tr. at 127:23-132:5.) She testified that she pointed out Kyle Turner as wearing the same hat as the person who had robbed her apartment. (Sprow Tr. at 147:19-25.) She testified that Williams responded that he "would take care of it." (Sprow Tr. at 148:1-2.) She testified that on the night of the shooting, she was in her apartment, when just after hearing the gunshots, all three Defendants entered her apartment carrying guns. (Sprow Tr. at 142:20-143:5.) She testified that Williams later admitted to having shot Turner. (Sprow Tr. at 146:10-15.)

On top of this, Rayshorn Niles testified that he saw Wigenton and Anderson shooting Turner and that he saw all three Defendants run into Sprow's apartment, with Williams carrying a gun. (Niles Tr. at 17:24-18:24.) Reginald Moten also testified that he was present with Turner before he was shot, that the only other people around were Defendants, and that Turner was shot moments after he left. (Moten Tr. at 5:20-12:22.)

Moreover, Jerome Waters testified that Defendant Anderson told him that Turner's shooting resulted from their finding out that he robbed them. (Waters Tr. at 14:13-21:6.)

7

Waters further testified that Defendant Wigenton told him that he threw the gun used in Turner's killing off of a bridge. (Waters Tr. at 21:7-20.)

This testimony was fully consistent with the physical and forensic evidence presented at trial.

Defendant Wigenton presents several alleged flaws with this picture. First, he claims that Rayshorn Niles testified that, when Wigenton entered Sprow's apartment, Wigenton did not possess a firearm. In fact, however, Niles merely said that Defendant Anderson did have a gun; he never stated that the other defendants did *not* possess guns. (Niles Tr. at 18:18-24, 52:14-18.)

Second, Wigenton argues that Waters's testimony, along with that of Jeremiah Jackson, merely supported the claim that Wigenton threw a gun off a bridge that was used in a shooting, but did not actually implicate him in the shooting. Perhaps so, but other witnesses' testimony *did* implicate Wigenton in the shooting and its aftermath. Altogether, it was enough for the jury to find as it did.

Finally, in Defendant Anderson's Reply brief, he introduces a new argument that "the government's [jury] instructions" as to the 18 U.S.C. § 924(j) element of Count 3 constructively amended the indictment by failing "to articulate each and every element of the offense as charged in the

indictment that the government was required to prove beyond a reasonable doubt." Although Defendants failed to raise this objection before the jury retired as required by Federal Rule of Criminal Procedure 30(d), it is the rule in this Circuit that constructive amendments are error *per se*, which "must be corrected . . . even when not preserved by objection." *United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994).

A constructive amendment occurs when the Government or the Court "broadens the possible bases for conviction beyond those presented to the grand jury." *Id.* at 710. Here, Defendants argue that whereas the Superseding Indictment charged them with "knowingly and willfully caus[ing] the death of Kyle Turner . . . which killing was *defined as murder*, as defined in 18 U.S.C. § 1111" [Dkt. 4 (emphasis added)], the Court's instructions permitted the jury to find them guilty of simply causing death, as opposed to actually committing a murder.

The Court disagrees. Jury Instruction 48 repeated Count 3 of the Indictment word-for-word, including the allegation of murder. Instruction 50 then stated the three essential elements required to establish guilt. The first element stated, again, "[the Defendants] committed the crime of using a firearm in connection with the conspiracy to distribute crack cocaine resulting in death *as identified in Counts* One, Two, and *Three*." (emphasis added). This element did not define

homicide differently from the Indictment; it directly adopted the Indictment's definition of "death as identified in Count Three." Thus, the Indictment was not enlarged, and no constructive amendment took place.

### III. Conclusion

For these reasons, the Court will deny Defendants' Motions.

|  | /s/ |
|---|---|
| March 8, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |