IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | |
| ) | 1:09cr414 (JCC) |
| Marvin Wayne Williams, Jr., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motions to Strike Verdicts. [Dkt. 143.] Defense Counsel claims that, in the course of his work on another matter, he encountered 22 reports of interviews by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") with and/or relating to Annette Sprow and/or Jerome Waters--two key government witnesses in this case. Defendants claim that these reports were "heretofore undisclosed" and that the Government's failure to turn over the reportsviolated their constitutional and statutory discovery rights.

The Government responds that it turned over all but two of these reports, that one of those two was created after Defendants' conviction in this matter, and that the remaining report was not discoverable in this case. According to the

1

Government, upon learning of Waters's arrest, it obtained the ATF's reports, and printed, redacted, and Bates numbered them before presenting them to Defendants in a three-ring binder. According to the Government, the reports are contained within the Bates range USRV-001 through USRV-071. Moreover, the Government provides the Court with a November 19, 2010 letter notifying Defendants of the existence of these reports, and stating that they were available for review at the United States Attorney's Office.

Defendants respond that they received only four pages worth of ATF reports from the Government. Defense counsel acknowledges receiving the Government's November 19, 2010 letter, but appears to argue that that letter failed to fully describe the reports' contents. Specifically, counsel takes issue with the letter's statement that the reports relate to Jerome Waters' "drug buys," when in fact the reports allegedly also identify Waters as possessing a .380 caliber weapon. Counsel appears to argue that, had he known of Waters possessing this weapon many years after Kyle Turner's killing, it could have challenged Waters's trial testimony that he possessed a .40 caliber weapon.

Defendants argue that this violates *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the Government to disclose material evidence in its possession favorable to the defense.

*Id.* at 87. "Evidence is material when 'its suppression undermines confidence in the outcome of the trial,' or, when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Curtis*, 931 F.2d 1011, 1014 (4th Cir. 1991) (citing *United States v. Bagley*, 473 U.S. 667, 678, 682 (1985)). And here, the fact that Waters possessed a .380 caliber weapon many years after the killing of Kyle Turner does not even approach the level of materiality necessary for *Brady* to be implicated.

Also noteworthy is the fact that these reports were available for Defendants' review at the United States Attorney's Office. Defense Counsel appears to argue, however, that because the reports were made available for review on Friday, November 19, 2010, the weekend before Thanksgiving, and were allegedly not produced to Defendants, the Government's actions were insufficient. The Court disagrees. From the bates numbers provided by the Government, it appears that the 21 reports together totaled no more than 70 pages, such that Defendants had adequate time for their review before trial. Moreover, counsel for Defendant Williams reviewed these reports at the U.S. Attorney's Office, and it was represented to the Court that defense counsel split up document reviewing responsibilities in

this case and shared information gleaned from their reviews with each other.

This Court therefore turns to the one remaining report ("ROI 315"). There is no general Constitutional right to discovery in a criminal case. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987). Defendants argue that its withholding violated the Jencks Act (18 U.S.C. § 3500), the Supreme Court's decisions in *Jencks v. United States* and *Brady v. Maryland*, and the Sixth Amendment to the United States Constitution. The report is apparently dated July 20, 2010, and, according to the Government, it allegedly "describes the controlled purchase of crack from Waters's girlfriend." Allegedly "according to [the report], Waters's only role was to put the confidential source [making the controlled purchase] in contact with his girlfriend."

Regarding the Jencks issue, the Jencks Act requires the Government to produce statements made by a witness that relate to the subject matter of his or her direct examination and that are in the government's possession. 18 U.S.C. § 3500(b). The Act defines a "statement" as (1) a written statement made, "signed[,] or otherwise adopted or approved" by the witness, (2) a recording or transcription that is a "substantially verbatim recital of an oral statement made by [the] witness and recorded contemporaneously with the making of

such statement," or (3) testimony made before a grand jury. 18 U.S.C. § 3500(e)(1)-(3).

It appears undisputed that Waters did not sign or otherwise adopt ROI 315 and that the report does not contain grand jury testimony. The only remaining questions, then, are (1) whether it contained a substantially verbatim recital of Waters's statements and was contemporaneously made, and (2) whether the content of the statements relates to Waters's direct examination.

As for *Brady*, on this Court's understanding of ROI 315, it is hard to see how Waters's facilitating of a controlled drug purchase would have materially altered the outcome of Defendants' trial, especially given that Waters's drug involvement was seemingly well-known to all counsel.

Finally, Defendants claim that their rights under the Sixth Amendment's Confrontation Clause were violated. Presumably what they mean by this is that they were denied the opportunity to fully cross-examine Waters on the basis of information contained within ROI 315. "[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the

witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (per curiam).  Here, Defendants thoroughly cross-examined Waters regarding his drug involvement.  It is unclear to the Court how the information in ROI 315 would have added to Defendants' cross-examination opportunity in any way.  Thus, Defendants' confrontation rights under the Sixth Amendment were not violated.

|  | /s/ |
|---|---|
| March 8, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |